Chief Justice Robertson
delivered the opinion of the Court.
This is a suit in chancery, instituted by Isaac Webb against John Marsh and John W. Hundley, to foreclose Marsh’s equity of redemption in two slaves, alledged to have been mortgaged by him to Webb.
The bill alleges, that Marsh, being indebted to Webb, $¡512 64, borrowed from him on the 31st of March, 1819, and on the 19th of January, 1820, executed to him a mortgage'on two slaves, named Liddy and Wesley, to secure the payment of the principal debt, and legal interest thereon, on or before the 15th of March, 1820; that shortjy thereafter, Hundley took and converted to his own use, the boy Wesley, claiming him to be his property; that the mortgage was recorded, and Hundley had notice of it, before he took possession of Wesley, and $hat Marsh had *644 failed to pay the debt, or any part of it, (althpugfe the time for doing so had passed,) and .that he was unable to pay it.
Marsh died without answering the bill, which, thereupon, Webb prayed by amendment, to have revived against “his widow,” because she happened to be in possession of Liddy; but it does'not appear that the bill was ever revived.
Hundley, in his answer, virtually admits the execution, the registration, and the consideration of the mortgage, by insisting that it was fraudulent, because Webb had never taken the possession of the slaves. But he urgees that he, (Hundley) bad a perfect title to Wesley, acquired by “bona, fide” purchase, prior to the dale of mortgage; but that, as it was inconvenient to carry the boy with him when he boughthim,he left him with Webb, to keep fpr him a few days, until he should gend for him; all which, he proves by the subscribing witness to his bill of sale, which is exhibited, and is in the following words:
“Know all men, by these presents, that I have this day sold to John W. Hundley, a sound and healthy negro boy, for life, named Wesley, thirteen years old, and for the sum of $300, to me in hand paid, this day, by said Hundley. I do warrant and defend said negro from me and my heirs, and all other persons, to said Hundley and his heirs, forever; this boy, I bind myself to deliver to said Hundley, or his order when called for. The boy’3 life is at the risk of said Hund-ley: Witness my hand and seal, this 15th day of January, 1820.”
JOHN MARSH, [seal.]
Test — Sam’l. J. Dawson.
It is alleged in the mortgage, that the slaves were entitled to their freedom at 30years of age.
The circuit court decreed the foreclosure of the mortgage, and the sale of Liddy,- until she should attain 30 years of age. She was sold accordingly, but the avails of the sale, not being half enough to pay the amount due on the mortgage, the court by a decree rendered at the February term, 1828, having decided, that the absolute bill of sale, was fraudulent in law, directed Hundley to deliver the boy Wesley, *645 to the sheriff, on or before the 15th'of March, 1828, to be sold ibr the benefit of Webb; and in the event of his failing so to surrender him, directed a jury to be empannelled at the March term, 1828, to ascertain his value.
A bill of sale,' absolute in iis tarms per se, void as to ere* ditors of the seller; unless possession in the buyer accompany and follow the sale.
Hundley, having failed to deliver the slave, a jury was accordingly empannelled at the March term, 1828, who returned the following verdict: “We of the jury, find the negro boy Wesley, named in the decree, for the time he had to serve, worth on the 27 th September, 1823, $200.” Whereupon, the court decreed, that Hundley pay to Webb, $200, with 6 per cent interest thereon, from the 27th of September, 1823, until paid, this aggregate being less than the balance still due to Webb, on the mortgage.
To reverse this decree, Hundley alone, prosecutes this writ of error.
The principal question, presented for consideration, in this case is, whether, as to Webb, the bill of sale toHundley,is oris not fraudulent, “perse?” And this is pot only an important, but a difficult, and perplexing question.
The general doctrine is well established, that an absolute bill of sale of a personal thing, unless it be ‘jfollowed and accompanied” by the possession of the purchaser, is void, so far as the creditors of the seller may be affected by it. This has been the practical, and for many years, the uniform construction, in England, of the statute of the 13th Elizabeth; and has been the invariable interpretation of this court, of the Kentucky statute, for the prevention of frauds. This construction has been deemed consonant with the spirit and object of these salutary enactments, without which, their beneficial aims might be easily frustrated.
Proceeding on the maxim, that statutes for prevention of fraud, should be liberally expounded; and anxious to effectuate, as far as practicable, the ends designed to be accomplished, by those of 13th and 27th Elizabeth, the courts of England, by a com struction, peculiarly latiludinary, have established a system" of (what has been styled by some) “judicial legislation,” whereby they have prescribed certaip *646 ■badges of fraud, which, whenever they appear, wik vitiate the contract, however fair and upright, the intentions of the p.arties may have been: and among them, there is (he n Henlion of possession, by the seller, atieran absolute saje. “The} resolved upon such a construction of both these statutes, as might extract from them, an operative, and beneficial law; arid, as they seemed purposely written, in general language, 1o give room lora more- extended judicial interpretation, they considered largely their spirit and purview, and framed upon them, certain rules of evidence, for the suppression of fraud, which, as they are the result of strong sense, and founded in general utility, ought not to be lightly departed' from, for the sake of obviating particular hardships/5' Roberts, XIV.
Tho rule, inflexible, so far as applicable, inapplicable to sales that do not vest absolute title at their date.
“By placing parties umder a disability to commit fraud, we shall see wisdom in that violent construction, which, according !o the moral rule,necis arhficis arte perire sm, converts ambiguity into evidence of whatit was meant to disguise, and erects on a foundation of common experience, a sort of artificial presumption, of fraudulent intentions, from equivocal transactions. In this view, w.e shall, perhaps, see no absurdity in the language of ancient boobs, wherein certain transactions are said t.o be “intended, and presumed to be made, with intent to deceive purchasers,” or to be fraudulent in judgment of law.” Ibid. 189.
Whether such reasoning should have been perfectly satisfactory, it is too late now to enquire; the foregoing rule, as to absoluie bills of sale, is permanently fixed as the law of the land, Hamilton vs. Russell, I. Cranch, 309; Dale vs. Arnold, II. Bibb, 605; Goolsberry vs. May, I. Litt. Rep.; Davis vs. Cope, IV. Binney, 258; Stone vs. Grubbam and Coke, II. Bulst., 225; Sturtevant vs Ballard, XI. Johnson, 337 Waters vs. M‘Lelland,IV. Dallas, 208.
This rule, as far as it is applicable, is inflexible. It allows no subterfuge, no explanation of the fact of possession. But it does not apply to conditional sales, or such as do not vest the absolute title at their date. .Chief Justice Marshall, in surveying the various authorities on this subject, says, (in Hamilton vs.Russell:) “The distinction they have taken, is. between a deed purporting on the face of it to be absolute, so that the sepa *647 ration of the possession from the title, if? ^incompatible with the deed itself; and a deed made .upon condi-t-ion, which does not entitle the vendee to the diate possession.”
In Stone vs. Grubham, Coke says: “But .if the deed or conveyance, be conditional, then the ven-dors con. tinning in possession, does not avoid it, becaui <c, by the terms of the conveyance, the vendee is no.t to have the possession, till he has performed the condition.”
The same distinction is taken in Lady Lambert’s case, (Touchstone, 65.) If the bill of sale in this case, did not shew on its face, that the possession did not accompany the sale, there could be no room for doubt, that however it might be in fact, in law, it would be void, so far as the right of Webb may be concerned; and that no explanation could rescue it from its legal doom; this rule of law will not be reasoned with. But as the bill of sale, expresses that the seller should retain the possession until the buyer should send or call for the slave, the question arises, whether this circumstance protects the sale, from the denunciation of ‘dogal fraud,” when tested by the rule established by the foregoing quotations?
The. precise line which circumscribes the rule, has not been distinctly defined. However, most eases that occur,may be seen plainly to be on the one side or the other, and therefore, present no difficulty. But there is a class of cases, (of which this seems to he one) which cannot be seen certainly, to be on the onq side or the other; but may be said to lie in the twilight, which borders the line of demarcation. This results from the generality of the terms, which have been employed to define the rule.
The general rule is, that when the bill of sale vests in the purchaser, the absolute title, the possession must follow the title. But does the rule apply to a case in which, although the deed, or bill of sale, passes the absolute right, it also shows, that the possession is, by agreement, to remain with the vendor? or in other words, must the possession be compatible with the t^yms of the deed, or with the tjUe of the deed? The .possession must accompany the sale, unless the bill of sale itself, shows that it does not. This is evh
If the sale be ^«ropon*0”' "trust, but pass on absolute cl lately Tooths purchaser, no possession, by the seller,-in the written wiVprotect the transaction from the afraudinto, or excuse the want of pos-purchaser.^ít as void as’to creditors.
Bul If the bill of sale show an absolute sale, ancl. transferof the legal right, will any thing else, which it may contain, dispense with the legal necessity of an anion of tit*e and possesion? Or will the disclosure fry swc/t bill of sale, of the fact, that the purchaser does not, or by the contract is not entitled to, take possession immediately after the sale, exempt the contract from the imputation of fraud in lawf
y¡re no¡- i?now that there has been any direct decision, by this, or any other supreme court, which will authoritatively furnish, a precise and satisfactory answer to these questions, unless it can be found in the case already referred to in XI. Johnson. Nor have our researches enabled us to ascertain that any wejj defined boundary of certain, and universal application, has been fixed to the doctrine of constructive fraud, by the numerous decisions which bear upon |f. Bat an examination of the rationale of tile doctrine, and an analysis of the principles of the most approved judicial opinions, which we have seen, in» eline us to the opinion, that the most consistent, and philosophical conclusion is, that unless the contract of sale be conditional, or in trust, the possession should -correspond with the title; and. that if the sale be unconditional, and pass the absolute, right of property, from the seller to the purchaser, no reservation of the possession to the seller, in the written evidence of the sale, will exempt the transaction from the imputation of a fraud in law, upon the rights of the “bona fide” creditors of the seller.
^ The reason of the doctrine of constructive fraud seems to be twofold:
1st. Because possession, (especially of a personal thing,) being one of the strongest popular, as well as legal indicia of ownership, the possessor, who had once been tne owner, continues to be the ostensible proprietor, and thereby is permitted to enjoya delusive credit, whereby he may be able to deceive and injure those who may not be initiated into the secret, that the property has been transferred to some other person.
2d. Because, possession ancl enjoyment, being the ends, and natural, and usual concomitants of perfect. *649 absolute title, the retention of possession, by the for-tner owner, after an unconditional sale of the properly to another,is incompatible with the sale; therefore, a badge of collision. Either branch of this reason, will equally tend to sustain the general rule, which has just been suggested, as (he result of ourinyestigations; and would be irreconciieahlc with any rule, more restricted or qualified.
to with j^mfbein’ the title, & must sa]le and must be legal, Conj,0SSe8sion, by vendor may fraudulent, but is not so perse,
But if the sale be conditional, and be so expressed in the deed, or bill of sale, the possession need not be changed, because its retention by the seller, is not incompatible with, but is conformable to the title. The absolute title has not passed from him; and therefore, in such a case, whether there be fraud or not, will not be determined arbitrarily by the law, as a necessary deduction from the sale, and the possession, but would be a question to be settled by the proof of the intention.
If the deed, or bill of sale, shew that an absolute and immediate, title has passed, the possession, which is its natural consequence, must “follow and accom-j pany” it. But if the contract evince only a condi-1 liana! sale, as the absolute title has not been changed-, it is not necessary,, that there should be a change of the possession.
But the condition must be in the title; and not ply in the contract, that is, the title must depend on condition; and tins must appear in the deed or bill of sale; and the condition must, when it shall so appear, be such as the court may consider reasonable and legal. For the law does not declare that, in conditional sales, the retention of the possession by the vendor, may not be fraudulent; but, that as a general rule, it is not necessarily so. it will, however, be so considered, unless the condition be consistent with the reason and policy of the rule itself, which defines “fraud in * J /
The foregoing principles seem to be fairly deduct ble, from the eminent authorities which we have quoted, and are all sanctioned by the elaborate and learned opinion of the supreme court of New York, delivered by chief justice Kent, in the case of Sturtevant vs Ballard. XI. Johnson.
if sain ho "hattnl^aiul tin; seller reserve the right to retain pos ny period,say three months, ni'oit "f^do*'8" livery," is oen-sidered as «íiotruis-io10 vloiiperse0" frauduiont¡as unlessVpeoial reasons exist be shewn to and approved by the court.
Holt sold his Blacksmith’s fools to Slurtevant,“partly fot cnsh, and partly for a debt due” to him. And the bill of sale contained an agreement, that Holt should retain the use of the tools for three months. The benefit of this stipulation was a part of the consi do* ration for the sale; and the question which arose in the case was, whether Slurtevant, or a creditor of j¡q0i¡ j-ad ¡pe better right to the tools; or, in other worns, w aether tee salo was, in consequence of the subsequent possession by Holt, fraudulent “parse” sn!* vo^' as i‘,e creditor of Holt. The contract appeared to have been fair, and “bona fide,” and for a full and valuable consideration. But the court do-csc*ec' Knanimously, that it was fraudulent in law; because Kolfc .waspermitted to retain the possession, after he had parted with the absolute title.
The following extracts from that opinion, may shed some light upon the subject:
“Delivery of possession, is so much of the essence of the sale of chattels, that an agreement to permit the vencjor to^keep possession, is an extraordinary exception to the usual course of dealing, and requires a satisfactory explanation.”
“The cases in which a postponed delivery has been allowed, arc all of them special,” (showing that they ■"are eases of trust or conditional sales.)
“There is no case which sanctions such a sale, as the one in the present case: for here, no reason wmatever, appears, for withholding delivery of possession; and the sale must, therefore, be considered, in judgment of law, as fraudulent and void, against the creditor.”
“The law has, in every period of its history, spoken a uniform language, and has always looked with great jealousy upon a sale, or appropriation of goods, without parting with the possession, because it forms so easy, and so fruitful a source of deception.”
“A voluntary sale of chattels, wdth an agreement, cither in or out of the deed, that the vendor may keep possession, is, except in special cases, and for special reasons,.to be shown to, and approved by the court, fraudulent, and void, as to creditors. This is clearly not one of (hoce cases.”
The cases in which a postponed delivery may be allowed are special, and the reason must appear in the contract of sale, prop t ali-unde- notad-missaMt*.
The opinion from which we have quoted the foregoing extracts, tends, we think, to the true doctrine of the law. We have referred to it, for its reason, not its authority. It does not directly decide, that the keeping of possession by the vendor, after an absolute sale is, in all cases, fraudulent in law; but it virtually declares this. However, it does clearly and expressly, decide that, “the cases in which a postponed delivery will be allowed are special;” and that the reason must be satisfactory to the court. The reason must, of course, appear on, or be inferrable, from the face of the contract: for it is the contract of sale, which determines whether the possession be fraudulent per se, or not, and the judgment of the law on the subject, and the possession cannot be averted, or influenced, by any extraneous circumstances; there can be no explanation “dehors,” the writing.
If Hundley should be exempted from the operation of the general rule against fraud, it would be easy to make collusive bargains with impunity, by simply stipulating, that the vendor should retain the possession. ^
The bill of sale is unconditional. Jt passed the title, as far as Marsh could transfer if, to Hundley. It does not show a sufficient, or indeed, any reason, why Marsh retained the possession of the boy after the sale. The judgment of thé law, on these facts is, that as to a bona fide creditor of Marsh, the sale to Hundley is fraudulent; and it results necessarily, that this judgment cannot be avoided by proving reasons for permitting Marsh to keep the possession. The bill of sale and possession, are incongruous; the possession did not “accompany and follow” the property.
The declaration in the bill of sale, that Marsh was to keep possession for a limited time, imports no more than would be implied by the fact, that he did so keep the possession, without any such stipulation. If the bill of sale had been silent about the possession, the fact, that Marsh had retained it after the sale, would necessarily imply, that he was permitted to do so by Hundley’s assent, either express or tacit; and it is this that would have rendered the sale fraudulent in *652 law. The disclosure, in the bill of sale, of Hundley^ assent to the possession of Marsh, can have no other effect, unless the same bill of sale shows" also, a sufficient reason for it; that is, that the possession was consistent with the till?, or in other words, that the absolute and perfect title, had not vested, by the sale, in Hundley.
Contract maybe fair and honeslin fact, yet fraudulent in law.
Whenever the whole title is absolutely sold, the property must be transplanted. It must take root in a new soil, its vendor cannot longer enjoy its use, without insecurity to the vendee. This we believe to be the sound doctrine, and the only one which will effectuate the policy of the law.
Such a doctrine, may sometimes operate harshly and injuriously, and contrary to its true aim. Bui this is an unavoidable consequence of its generality, and is no evidence of its injustice in the abstract. Similar consequences, must occasionally result from the application of every general rule, or principle, even the most perfect and just. The general rule of law, which we have felt compelled to apply to this case, has been deemed wise and wholesome. Its primitive efficacy, has been extensive and salutary. It is designed as an expedient for checking and embarrassing fraud. It cannot injure the innocent, if they exercise propel care and prudence. Its natural tendency is, to act on the guilty. It is better that some cases of individual hardship should be suffered, in consequence of its unrelenting and universal operation, than that, by relaxing it, or endeavoring to accommodate it to circumstances, its design should be eluded, and itself be made the sport of' artifice and collusion.
The contract, in this case, exhibits no badge of fraudulent intent by Hundley. His purchase may-have been perfectly fair; but it muststand or fall, not according to its moral aspect, but its legal character. Its legal invalidity, may furnish a peculiarly striking example, of the inflexibility of a general rule of law, established to prevent fraud; of the great importance attached to the efficacy of the rule, and the eminent advantages which are expected to flow from its enforcement.
Mortgage, a conditional by^mort-gagorcongruous with the law
D00triaeot’ constructive ^068 g°iefuuder!le-gal process'.
if the purchaser of the absolute title, permit the property still to remain in the possession and u?e of the vendor, it would be more just, that such a gent, or confiding vendee, should lose it, than that a subsequent bona fide purchaser, of the same vendor, should be deprived of it.
If it be not convenient to take possession of the property, the sale should be conditional, or be postponed; otherwise, the purchaser ejects to risk the consequences of his temerity, or confidence.
We, therefore,-see no escape from, the conclusion, that the sale to Hundley is void, if Webb was a bona fide mortgagee, for a valuable consideration.
It is objected by the counsel for Hundley, that Webb’s mortgage is void, in contemplation of law, because he did not take possession of the slaves; but permitted Marsh to keep the possession.
This objection is not well founded. The whole reason of the law, and decided preponderance of its authorities, sanction a possession by the mortgager. A mortgage is but a conditional sale. Possession by morfgagor, is noiper se fraudulent. There are some modern cases in England, which tend to countenance the opposite conclusion. But we cannot avoid the belief, that these cases have resulted from confounding the statutes of 13th and 27th Elizabeth, against fraudulent sales and conveyances, with the bankrupt act, of 25th Jac. I. which subjects to the assignees, goods in the possession of the bankrupt by the permission of the owner.
If, however, we are mistaken in this we are still well satisfied, that it is firmly settled by reason, and authority-here, that possession by a mortgagor is not fraud in law.
Webb was the creditor of Marsh. He took the mortgage to secure his debt. If the fact were material, it might be shewn from the answer of Hundley, that Marsh was in possession of Wesley at the date of the mortgage. Wes,therefore, consider Webb, as standing in sucb an attitude as to take advantage of the possession by Marsh, after his unconditional bill of sale to Hundley. .
This constructive doctrine of fraud, does not, as has been frequently decided by this court, apply to *654 sales, mulcr process of law. See also, Cole vs. Davis, (I. Ld. Ray’d. 724;) and Bucknel vs. Roiston,(Prac. in and Waters vs. M‘Clenan, IV. Dallas, 108.)
The mortgagor or his shoukfbe^ar tyto'a biFAo foreclose.
errar to de-Interest™1118
Depezo, for plaintiff; Humphreys, {•or defendant.
The consequence of the foregoing views is, that there is no error in the principle of the decree against Hundley; but the decree is erroneous on other grounds:
1st. The representatives, personal or legal, of the mortgagor should have been made parties. It is not that there were neither heirs nor personal rePre8en^a^ves> and we do not feel authorized to indulge the presumption there were none. There should not be a decree against the alienee of the mortgagor, without making the latter, if alive, or his administrator or executor, or heirs, if he be dead, a party.
This suit was not revived against any representative of Marsh. And although, if there had been a proper revivor, this court would not, on the application of Hundley alone, reverse the decree for errors, merely to the prejudice of others, not parties io (ho writ of error, nevertheless, for defect of parties, this decree should be set aside.
2nd. It was error to decree against Hundley, accruing interest, after the decree, on the value of. the slavc‘ ■ Hc owed no debt to Webb> which, by operation of law, carried interest. His utmost liability was for the value of the slave, and interest upon it, to the time of assessment, in damages.
For these errors, the decree must he reversed, and the cause remanded for further proceedings, con-formably to this opinion.